# UNITED STATES DISTRICT COURT
# DISTRICT OF IDAHO

|  |  |
|---|---|
| CHRISTOPHER WINEBARGER, | Case No.: 1:15-cv-00276-REB |
| Petitioner, | **MEMORANDUM DECISION AND ORDER ON PETITION FOR REVIEW** |
| vs. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security | |
| Respondent. | |

Now pending before the Court is Petitioner Christopher Winebarger's Petition for Review (Dkt. 1), filed July 21, 2015, seeking review of the Social Security Administration's final decision to deny him disability benefits.[1] This action is brought pursuant to 42 U.S.C. § 405(g).  Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I. BACKGROUND AND ADMINISTRATIVE PROCEEDINGS

---

[1] Nancy A. Berryhill became the acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted in for Carolyn W. Colvin as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**MEMORANDUM DECISION AND ORDER - 1**

Petitioner applied for social security disability benefits on April 6, 2010, alleging a disability onset date of  July 1, 2007. (AR 278-279). The claim was initially denied on October 7, 2010 and also denied upon reconsideration on February 10, 2011. The Petitioner thereafter requested a hearing before an Administrative Law Judge ("ALJ"), which was held on February 10, 2012. ALJ John Molleur presided over the hearing, and issued a denial of Petitioner's claim on March 12, 2012. (AR 162-178). Petitioner appealed that decision to the Appeals Council, which remanded the case to the ALJ for consideration of new evidence. (Ar 179-82). Petitioner appeared at a second hearing before ALJ Molleur on October 11, 2013. Petitioner was represented at this hearing by his attorney, Taylor Mossman. A vocational expert, Beth Cunningham, also testified at the second hearing. (AR 66).  At the time of the second hearing, Petitioner was thirty-one years old.

On November 19, 2013 the ALJ issued a second decision, again denying Petitioner's claims. (AR 12-22). Petitioner timely requested review from the Appeals Council, which denied review on May 27, 2015, rendering the ALJ's decision the Commissioner's final decision. (AR 1-5). Petitioner now seeks judicial review of the Commissioner's decision to deny him benefits. He contends the ALJ erred by: 1) failing to give proper weight to the opinions of several treating providers, and relatedly, in finding that Petitioner did not meet or equal the relevant listings; 2) by failing to provide clear and convincing reasons for discounting his credibility; 3) by failing to consider the cumulative effects of the Petitioner's mental and physical limitations; and 4) by failing to

**MEMORANDUM DECISION AND ORDER - 2**

fully develop the record with respect to Petitioner's cardiomyopathy in accordance with the remand order from the Appeals Council's remand order.

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards.  42 U.S.C. § 405(g); *Smolen v. Chater,* 80 F.3d 1273, 1279 (9th Cir. 1996);  *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive.  42 U.S.C. § 405(g).  In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence.  *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005); *Flaten v. Sec'y of Health & Human Servs*., 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance of evidence, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir.1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to

accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala,* 53 F.3d 12035, 1039 (9th Cir. 1995); *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1989). The ALJ is also responsible for drawing inferences logically flowing from the evidence. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *Id.* However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III. DISCUSSION

**A.    Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) - or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) - within the meaning of the Social Security Act.

**MEMORANDUM DECISION AND ORDER - 4**

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work activity that is both substantial and gainful.  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a), 416.972(a).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized.  20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe his physical/mental impairments are and regardless of his age, education, and work experience.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that the claimant had not engaged in SGA since July 1, 2007, the alleged onset date of the disability. (AR 13).

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.  20 C.F.R. §§ 404.1521, 416.921.  If the

**MEMORANDUM DECISION AND ORDER - 5**

claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Here, the ALJ found that Petitioner had the following severe impairments: bipolar disorder, personality disorder, post-traumatic stress disorder, ulcerative colitis, status post closed head injury, and idiopathic cardiomyopathy. (AR 13.)

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the ALJ concluded that Petitioner did not have an impairment or combination of impairments that met or medically equalled the severity of one of the listed impairments. (AR 14.)

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1545, 416.945.  Likewise, an individual's past relevant work is work performed within the last

**MEMORANDUM DECISION AND ORDER - 6**

15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ determined that the Petitioner had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), subject to the limitation that work must be uninvolved, with up to only three or four steps per task. The ALJ also found that such work must be performed in a low stress environment, meaning that it could require only occasional decision making, occasional changes to the work setting, and only occasional contact with the public. (AR 15). The ALJ also found that Claimant had no past relevant work history. (AR 20).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). If the claimant is able to do other work, she is not disabled; if the claimant is not able to do other work and meets the duration requirement, she is disabled. The ALJ found, at step five, that Petitioner is capable of performing the following jobs in the sedentary work category that were consistent with the additional limitations identified in the residual functional capacity: 1) surveillance systems monitor, 2) document preparer and 3) final assembler. (AR 20-21.).

**MEMORANDUM DECISION AND ORDER - 7**

**B.      Consideration of Treating Provider Opinions**

The Court first addresses the argument that the ALJ failed to give proper weight to the opinions of Petitioner's treating doctors and other medical sources. This argument is closely linked to Petitioner's claim that the ALJ failed to properly apply the listing criteria for mental impairments found in 20 CFR pt. 404, Subpart P, Appendix 1, § 12.04(B), which the Court addresses in the context of its discussion of the appropriate remedy, found at Section C, below. The Court agrees that the ALJ failed to identify clear and convincing reasons for discounting the opinions of two of Petitioner's treating doctors, namely, Dr. Si Steinberg, a psychiatrist, and Dr. Alex Johnson, a cardiologist.

In Social Security cases, both ALJs and reviewing courts "employ a hierarchy of deference to medical opinions depending on the nature of the services provided." *Ryan v. Comm'r. of Soc. Sec. Admin,* 528 F.3d 1194, 1198 (9th Cir. 2008) (citing standard in dissent); *See also, Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995). This hierarchy distinguishes among three categories: those who treat the claimant, those who examine the claimant but do not treat him, and those who neither examine nor treat but simply review the medical evidence prepared by others and provide opinions as to the presence or absence of functional limitations.

Generally speaking, a treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a non-examining physician's opinion. *Ryan,* 528 F.3d at 1204. If a treating doctor's opinion is not contradicted in the record by the opinion of another

**MEMORANDUM DECISION AND ORDER - 8**

doctor, an ALJ may reject it only for clear and convincing reasons that are supported by substantial evidence in the record. *Id.* at 1198; *Lester,* 81 F.3d at 830. The ALJ must accord "controlling weight" to a treating doctor's opinion if medically approved, diagnostic techniques support the opinion and the opinion is not inconsistent with other substantial evidence in the record. *Ligenfelter v. Astrue,* 504 F.3d 1028, 1038 n.10 (9th Cir. 2007). This deference to the opinions of treating doctors does not, however, require an ALJ to accept the opinion of any doctor, including a treating doctor, that is "brief, conclusory, and inadequately supported by clinical findings." *Chaudry v. Astrue*, 688 F.3d 661 (9th Cir. 2012). An ALJ may also properly reject opinions of treating physicians where they are wholly based on the claimant's self-reporting and not backed up by any objective medical findings. *Turner v. Comm'r. Soc. Sec.,* 613 F.3d 1217, 1222-24 (9th Cir. 2010); *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002). Finally, the opinion of a non-examining physician cannot, by itself, constitute substantial evidence justifying the rejection of the opinion of a treating physician. *Lester,* 81 F.3d at 831.

### 1. Lifeways Clinic Records

In deciding that Petitioner was not disabled, the ALJ rejected opinions from several different providers or categories of providers. The first such category consisted of Petitioner's providers from the Lifeways Clinic, a group which included Si Steinberg, a

**MEMORANDUM DECISION AND ORDER - 9**

psychiatrist; Patricia Barfield, a nurse practitioner; and Jay Whitcomb, a licensed clinical social worker.

    a.    **Dr. Steinberg**

Dr. Si Steinberg was Petitioner's primary treating psychologist over a period of several years beginning in 2011. The record contains four opinions from Dr. Steinberg with varying degrees of detail about Petitioner's level of alleged disability.

First is a medical source statement dated November 18, 2011. (AR 551-552). In this document, Dr. Steinberg described Petitioner's prognosis as "guarded," and opined that he was "seriously limited, but not precluded," from carrying out various work-related functions, such as remembering and understanding simple instructions, working in coordination with or proximity to others, making simple work-related decisions, responding appropriately to changes in routine, and interacting with the general public. (AR 551-552). According to Dr. Steinberg, Petitioner had "marked" difficulties in social functioning and in maintaining concentration, persistence, and pace. Further, it was extremely likely that Petitioner would have more than three episodes of de-compensation within a twelve-month period. (AR 553). Dr. Steinberg also said in his initial report that Petitioner suffered from "a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to de-compensate," and that Petitioner would be unable to meet competitive standards when it came to maintaining attention for a two-hour segment. (*Id.*). More specifically, Dr. Steinberg explained that "due to

**MEMORANDUM DECISION AND ORDER - 10**

overwhelming anxiety, Christopher is unable to remember short term or detailed instructions without having them written down. If he can use written prompts he can only sometimes perform due to interference by anxiety, depression, or mania." AR 552.

The second opinion from Dr. Steinberg consists of a brief handwritten note on a prescription form. On that form, Dr. Steinberg states, "Christopher has been my patient since June of 2011. He has Bipolar Disorder Type I, most recent episode manic. He is definitely disabled and unable to sustain gainful employment due to his mental condition." On January 30, 2012 Dr. Steinberg provided another letter regarding disability, the full text of which states, "It is my medical opinion that the above-mentioned patient is currently disabled and is expected to be disabled for the next 12 months. Any drug and/or alcohol abuse is not a contributing factor material to my disability determination. Absent of any drug and/or alcohol abuse, the patient would still be limited from performing any substantial gainful activity on a sustained basis." (AR 576). Finally, on October 15, 2013, Dr. Steinberg completed a second Mental Residual Functional Capacity Assessment, in which he opined that Petitioner had markedly limited abilities to carry out the following work-related tasks: understanding, remembering, and carrying out detailed instructions, maintaining attention and concentration for extended periods, performing activities within a schedule, maintaining regular attendance and being punctual within customary tolerances, and working in coordination with or proximity to others without being distracted. (AR 1078). Dr. Steinberg also opined that Petitioner was markedly limited in the ability to complete a normal workweek without interruptions

**MEMORANDUM DECISION AND ORDER - 11**

from psychologically-based symptoms, and in his ability to engage in normal social interactions to include accepting instructions, interacting with the general public and getting along with co-workers. (AR 1079). According to Dr. Steinberg, Petitioner "cannot possibly maintain employment, as, even with aggressive medication intervention his moods swing from mania with grandiosity, pressured speech, dangerous pleasure seeking behaviors (unprotected intercourse with multiple partners) verbal aggression alternating with profound depression and worsening of chronic suicidal ideation." (AR 1080).

> The ALJ chose to give only limited weight to Dr. Steinberg's opinions, stating:

> The undersigned accords these opinions limited weight as they are internally inconsistent with the medical evidence of record as a whole. Specifically, the treatment notes from May 2011 indicate that Dr. Steinberg assessed the claimant with the GAF score of 62. The claimant's previous GAF score was noted to be 60. Notes from November 2011 indicate that the claimant's chronic suicidal ideations were "not so bad." Furthermore, as relates to the claimant's computer and marijuana use the statements he offered to his physician are in stark contrast to his testimony. The claimant admitted to smoking marijuana/hashish every night and using the computer as a dating tool for a period of two years, even though he testified that he used it every one to two months to check email and "surf" the internet. Thus, Dr. Steinberg's opinion is not consistent with the record as a whole. (AR 18-19).

The reasons provided for rejecting Dr. Steinberg's opinions do not meet the standard of clear and convincing reasons supported by substantial evidence in the record.  To say that Dr. Steinberg's opinions were "internally inconsistent" because claimant's suicidal ideation was "not too bad" on the day that Dr. Steinberg filled out his first disability assessment simply means that the Petitioner may not have been experiencing suicidal ideation in the same measure, on every day.  Further, suicidal ideation was only one of

**MEMORANDUM DECISION AND ORDER - 12**

many potentially disabling symptoms described by Dr. Steinberg in the substantive

disability assessments that he provided in 2011 and 2013.

The ALJ then discounted the weight to which Dr. Steinberg's opinion would

otherwise be entitled based upon a perceived inconsistency between the Petitioner's

testimony about his marijuana use and his computer use and his statements on the same

topics contained in the medical records. (AR 18-19). The Court carefully reviewed

Petitioner's testimony at the hearing on the question of his marijuana and computer usage

and compared it to the medical records cited by the ALJ.  In doing so, the Court cannot

identify any material inconsistencies. At the hearing, the Petitioner admitted to using

marijuana occasionally for medical reasons, due to ulcerative collitis, and also to one

period where he was using it on a daily basis (AR 61-64). The medical records cited by

the ALJ indicate that on various visits to Dr. Steinberg in the latter part of 2011,

Petitioner said he was using marijuana every couple or three weeks. (AR 555). On

another occasion Petitioner reported that he had used marijuana once since his office visit

the previous month, (AR 563).  On another visit, he said he had been using marijuana

every night for the period in question, due to stomach issues. However, Petitioner also

testified that he lives in Oregon and has a medical marijuana card, which at the time

permitted him to purchase marijuana for personal use. (AR 90, 561). The remaining

records referenced by the ALJ either have no mention of marijuana or computer usage at

all (AR 557), or indicate that Petitioner had been using the drug "every so often." (AR

**MEMORANDUM DECISION AND ORDER - 13**

567). Such testimony does not constitute substantially or materially different accounts of the same subject, such as would constitute the "stark contrast" identified by the ALJ.

The ALJ's final reason for discrediting the opinions of Dr. Steinberg was premised upon a perceived inconsistency between medical record references to Petitioner's Global Assessment Functioning (the "GAF" score), and Dr. Steinberg's opinions that Petitioner was totally disabled. Dr. Steinberg in his first assessment indicated that Petitioner's lowest GAF score for the previous year had been 45.  However, this statement was plainly incorrect, because records from Lifeways Clinic indicate that he actually had GAF scores during 2011 and the latter part of 2010 that ranged between 52 and 62.[2] (AR 536, 538, 540, 542, 545, 547-549, 564, 566, 567, 569). It is unclear whether mental health care providers made an assessment of Petitioner's GAF on each visit, or whether these scores were simply carried over from previous visits.

There is a discrepancy, therefore, between the medical records and Dr. Steinberg's testimony regarding the GAF scores. As a general matter, that discrepancy might be reason for choosing to discount the provider's testimony, but it would not – at least on

---

[2] Although the GAF scoring rubric has recently been abandoned by the psychiatric profession, as is explained in more detail below, the GAF system was intended to represent a patient's overall level of psychological, social, and occupational functioning, without regard to any possible physical impairments. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM–IV"), at 32 (4th ed.2000). A GAF score in the range of 41–50 indicated serious symptoms or a serious impairment in social, occupational, or school functioning indicative of an individual who would be unable to keep a job. *Id*. In contrast, a  GAF score in the range of 51–60 indicated only moderate symptoms or moderate difficulty in social, occupational, and school functioning, indicative of someone who may have few friends and some conflicts with peers or coworkers. DSM–IV, at 34.

**MEMORANDUM DECISION AND ORDER - 14**

this record – be sufficient to constitute clear and convincing reasons for doing so based on

substantial evidence because of the nature of GAF scores. The American Psychiatric

Association abandoned the GAF rubric as a measure of mental functioning in 2013, with

the introduction of the Fifth Edition of the *Diagnostic and Statistical Manual of Mental*

*Disorders.* ("DSM IV"). Further, as the Ninth Circuit has recently explained, a disability

claimant's GAF score, while still a piece of evidence that an ALJ may consider in

deciding upon the question of disability, is nonetheless of limited value in assessing a

person's ability to work because GAF scores are created in a controlled clinical setting not

necessarily comparable to a workplace environment. *Garrison v. Colvin,* 759 F.3d 995 n.

4 (9th Cir. 2014). For this reason, courts have held that GAF scores are not dispositive of

the question of whether a person is disabled or capable of holding down sustained

employment. *See, e.g. Marcias v. Colvin,* 2016 WL 1224067 at *8 (E.D.Cal 2016). As

one sister court has recently explained:

> [T]he GAF scoring rubric has been deemed unreliable by the American
> Psychiatric Association and were dropped from the most recent edition of
> the Diagnostic and Statistical Manual of Mental Disorders ("DSM-5") "for
> several reasons, including its conceptual lack of clarity ... and questionable
> psychometrics in routine practice."  See Am. Psychiatric Ass'n., Diagnostic
> and Stat. Manual of Mental Disorders 16 (5th ed. 2013). The Social
> Security Administration released an Administrative Message AM-13066
> ("the AM") on July 22, 2013, which it revised on October 14, 2014, that
> "provides guidance to all State and Federal adjudicators (including
> administrative law judges) on how to consider ... GAF  ratings when
> assessing disability claims involving mental disorders. The AM emphasizes
> that "GAF ratings are not standardized," and that the "GAF is neither
> standardized nor based on normative data .... [limiting] direct comparability
> of GAF scores assigned by different evaluators." AM-13066, p. 2.

**MEMORANDUM DECISION AND ORDER - 15**

A GAF rating is still medical opinion evidence as defined in 20 CFR §§ 404.1527(a)(2) and 416.927(a)(2) and should be considered by the ALJ when from an acceptable medical source. However, its reliability is dependent on whether the GAF is consistent with the other evidence, the rater's familiarity with the claimant, and the credentials of the rater. *Unless the clinician clearly explains the reasons behind his or her GAF rating, and the period to which the rating applies, it does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis. Essentially, a GAF is just a "snapshot" or rough estimate of a claimant's presentation on the day of the examination. Unless the medical evaluator explains what symptoms are emphasized by the scores or what the score reflected in terms of functionality, the GAF scores are unreliable sources of specific functional deficits.*

*Lopez v. Commissioner of Social Security Admin,* 2016 WL 4107695 (D. Oregon 2016) (emphasis added) (internal case law citations and quotations omitted).

Here, as in *Lopez,* the ALJ considered the GAF scores in isolation as a reason to ignore or discount other evidence supporting a claim of disability that was contained in the medical records. Given the limited value of GAF scores, as explained in both case law and the Commissioner's own administrative ruling, GAF scores standing alone cannot amount to clear and convincing evidence for rejecting a treating doctor's opinions. *Lester,* 81 F.3d at 830; *Thomas v. Barnhart,* 278 F.3d 947 (9th Cir. 2002).[3]

---

[3] The Commissioner argues that agency rules do not require clear and convincing reasons for an ALJ to discount a treating doctor's opinion, and argues for a somewhat more deferential "substantial evidence" standard. See Respondent's Brief at p. 5 n. 1 (citing *Morjaraz-Munoz v. INS,* 327 F.3d 892, 895 (9th Cir. 2003) and *Valentine v. Commissioner, 574 F.3d 685 (9th Cir. 2009)). Morjaraz-Munoz* is an immigration case of little precedential value here. It is correct that the *Valentine* court did not use the words "clear and convincing" when discussing the ALJ analyses of treating doctor opinions, prompting the Commissioner to assert, in briefs filed since that date, that this standard no longer applies. However, the Ninth Circuit has continued to apply the "clear and convincing" standard in numerous opinions issued since 2009, at least where the treating

**MEMORANDUM DECISION AND ORDER - 16**

### b.     Jay Whitcomb and Patricia Barfield

Petitioner was treated by two other health care providers at the Lifeways Clinic: Patricia Barfield, a nurse practitioner, and Jay Whitcomb, a licensed clinical social worker. Social Security Ruling 06-03p provides that licensed social workers and nurse practitioners are not "acceptable medical sources under applicable social security regulations.  The primary distinction between "acceptable medical sources" and other types of providers is that the opinions of medical providers who are not considered "acceptable medical sources" are not entitled to controlling weight under the "treating physician" rule. See 20 C.F.R. §§ 404.1513(a) (1–5), 416. 913(a)(1–5). *See also, Hudson v. Astrue,* 2012 WL 5328786 N. 4 (E.D. Washington 2013). Nor can the opinion of a provider who is not also an"acceptable medical source" be used to establish the existence of an impairment. SSR 06-03p. At the same time, the Commissioner has directed that the opinions of such providers are nonetheless "important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." *Id.*

---

doctor's opinions are uncontradicted. *See, e.g. Turner v. Commissioner,* 613 F.3d 1217, 1222 (9th Cir. 2010); *Doney v. Astrue,* 485 Fed.Appx. 163, 164 (9th Cir. 2012); *Cero v. Commissioner,* 473 Fed.Appx. 536 at (9th Cir. 2012).  Ultimately, however, whether the Court applies the substantial evidence standard or  the more stringent "clear and convincing" evidence standard is a distinction without a difference in this case, given the wholesale abandonment of the GAF score rubric and agency and decisional law imposing a limited role for GAF scores in a disability determination.

**MEMORANDUM DECISION AND ORDER - 17**

Ms. Barfield treated Petitioner at Lifeways Clinic over a period of several years. On March 30, 2011, she filled out a Mental Capacities Evaluation Form on which she indicated that Petitioner would have "marked" difficulties in maintaining concentration, pace, and persistence, and also that he would have "marked" difficulties resulting in episodes of decompensation within a twelve month period. (AR 534). She also said that Petitioner would likely miss more than four days of work per month due to his mental limitations, and indicated that his highest GAF score for the previous year was 55. (Id.)

The ALJ discounted Ms. Barfield's opinions.  First, he noted that she was not an "acceptable medical source" under relevant agency regulations, and second, that her GAF score assessments were much lower than those assessed by Dr. Steinberg.

GAF scores are variable,  depending on the provider who makes the assessment, the factors each provider chooses to focus on, and the day that the assessment is made. Hence, it is not inconceivable that one provider might assign a claimant a different score than another.  Nonetheless, here, the fact that Ms. Barfield's GAF assessments were much lower than those assessed by Dr. Steinberg, together with the fact that her position does not entitle her opinions to controlling weight is a sufficiently sound reason for the ALJ's decision to discount her opinion, even though he did, obviously, consider it in the larger context as he was required to do. The Court, on balance, finds no error in the ALJ's assessment of Ms. Barfield's opinions.

**MEMORANDUM DECISION AND ORDER - 18**

With respect to Mr. Whitcomb, the Court agrees that the record supports the ALJ's view that Whitcomb's opinions on disability were inconclusive and equivocal. There was no error in the ALJ's treatment of Mr. Whitcomb's opinions.

### c. Dr. Mohandesi and Dr. Johnson

Lastly, the Court addresses two other practitioners who provided opinions relative to disability: Dr. Alex Johnson (a cardiologist) and Dr. Mohan Mohandesi (a general practitioner).

Dr. Johnson treated Petitioner for idiopathic cardiomyopathy and resulting lower extremity edema. Dr. Johnson filled out a questionnaire regarding Petitioner's ability to perform work related activities on October 18, 2013. (AR 1081). In that questionnaire, Dr. Johnson indicated that Petitioner was suffering from a cardiac condition that caused him to experience edema, and that he could experience weight fluctuations resulting in a six-to-eight pound weight loss or gain over twenty-four hours. Dr. Johnson also explained that the edema could result in a 30 pound weight gain or loss over a longer, unspecified period of time. "If edema is significant, then he would be impaired in activities required [sic] walking. Significant sitting time may also be painful." *Id*. When asked if Mr. Wineberger would be capable of engaging in any type of work activity on a full time basis, Dr. Johnson responded, "At this time it is unlikely. If his edema becomes controlled, the situation may change." Dr. Johnson also indicated that Petitioner's marijuana use did not raise any concerns for his cardiac care, because marijuana "has no known deleterious effects on cardiac function." Finally, he said that Petitioner would be

**MEMORANDUM DECISION AND ORDER - 19**

likely to miss at least five days of work in a 20 day work month due to his cardiac condition. *Id.*

> In rejecting the opinions of Dr. Johnson, the ALJ stated:

> This opinion is given little weight as no weight fluctuations were noted, and the claimant's edema was noted to be minimal and controlled with Lasix. (Exh. 18F, 21F). Dr. Johnson also noted that the effects of marijuana use on the claimant's heart condition were inconsequential, yet it is noted that the claimant denied drug use when asked about his use by Dr. Johnson. Thus, this detracts from the claimant's credibility.

The ALJ's reasoning does not withstand scrutiny against the requirement that he provide clear and convincing reasons supported by substantial evidence to discount the treating physician's opinion on such matters. To begin with, the ALJ cites to an Exhibit 21F consisting of over a hundred pages of medical records but makes no specific identification of the portion of such record that might support his statement as to the edema being well-controlled. (AR 897-997).  As to the (much shorter) Exhibit 18F also referenced by the ALJ, there is a reference to Dr. Johnson reporting on one occasion that Petitioner's "lower extremity swelling is under better control with Lasix and lisinopril." (AR 767). The remainder of Exhibit 18F, however, demonstrates that after the date of that chart entry, the edema continued to be a problem for which Petitioner continually sought treatment. (AR 756, 758, 762-64, 766). In other words, these records relied upon by the ALJ demonstrate that Petitioner's edema was subject to fluctuations over time. Isolating instances where a plainly variable condition was under good control while disregarding

**MEMORANDUM DECISION AND ORDER - 20**

evidence that suggests the opposite simply does not satisfy the clear and convincing

reasons standard for rejecting the opinions of a treating doctor.

As to Petitioner's marijuana usage, Dr. Johnson opined that this would have no

bearing on his cardiac issues. (AR 1081).  While it is conceivable that this conclusion

might be something that other physicians would take issue with, there is no such contrary

evidence in the record of this case, and therefore no evidence that would constitute a clear

and convincing reason for rejecting Dr. Johnson's opinion regarding the irrelevance of

Petitioner's marijuana usage.

As for Dr. Mohandesi, the only opinion in the record from him is a handwritten

note (AR 755) which simply alludes to Petitioner's bipolar disorder, severe manic

episodes and "numerous other medical issues which can interfere with having and holding

employment." Because this statement offered nothing in the way of useful analysis, the

ALJ was correct to discount it.

Finally, the Court is not persuaded by Petitioner's contention that the ALJ failed to

follow the instructions of the Appeals Council when it first remanded the case for further

development of the record on the issue of Petitioner's cardiomyopathy. (AR 180-181).

## C.      The ALJ's Credibility Determination

The Ninth Circuit has held that "where the record includes objective medical

evidence establishing that the claimant suffers from an impairment that could reasonably

produce the symptoms of which he complains, an adverse credibility finding must be

based on "clear and convincing reasons." *Carmickle v. Commissioner, Soc. Sec. Admin.,*

**MEMORANDUM DECISION AND ORDER - 21**

533 F.3d 1155, 1160 (9th Cir. 2008). If the record establishes the existence of an underlying impairment that could produce the symptoms described, "an ALJ may find testimony not credible in part or in whole, [but] he or she may not disregard it solely because it is not substantiated affirmatively by objective medical evidence." *Robbins v. Social Security Administration,* 466 F.3d 880 (9th Cir. 2006). Unless there is affirmative evidence of malingering in the record, an ALJ "may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." *Schow v. Astrue,* 272 Fed.Appx. 647, 651 (9th Cir. 2008). "General findings are not sufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Berry v. Astrue,* 622 F.3d. 1228, 1234 (9th Cir. 2010). In weighing credibility, the ALJ may consider the claimant's reputation for truthfulness or lying, inconsistencies in his testimony or between his testimony and his conduct or the medical records, the claimant's daily activities and work record, as well as testimony from third parties about the nature, severity, and effect of the symptoms about which he complains. *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996).

Here, the ALJ found Petitioner to be not credible. The ALJ premised that conclusion upon several different bases. First, the Petitioner had several medical conditions – a prior closed head injury and ulcerative colitis – which were not part of the reasons he put forward to establish his disability. However, the ALJ concluded that the fact that Petitioner received relatively little medical care for these conditions undercut his credibility as to those conditions on which Petitioner was relying as a basis for his

**MEMORANDUM DECISION AND ORDER - 22**

disability. Second, the ALJ  discredited Petitioner's claim of difficulty interacting with

the public based on evidence in the record that Petitioner had numerous sexual relations

with strangers he met and solicited online. Finally, the ALJ found Petitioner not credible

in his contention that sudden shifts in his weight affected his ability to work because the

record showed that his weight in May of 2013 was only six pounds off from his weight in

January of 2010. (AR 16-17).

The ALJ's reasons for discounting credibility do not comport with the "clear and

convincing" standard. As to the first category, seemingly the ALJ concludes that if

Petitioner had genuine problems with a prior closed head injury and ulcerative colitis,

then there would have been more evidence in the record of medical care for those

conditions.  Such a conclusion combines speculation as to why there may or may not have

been more records of medical care for such conditions with a suspicion that the absence

of additional records on those conditions must mean that the Petitioner was exaggerating

or malingering not only as to those conditions, but also as to the conditions upon which

he does claim disability.  Such a stretch is exactly that, and does not rise to the level of

clear and convincing.

As to second category of the Petitioner's weight fluctuations, the reliance upon

Petitioner's weight measured in January of 2010 compared to his weight in May of 2013

offers no reason to discount the other evidence in the record about Petitioner's short-term,

acute, fluctuations in weight. It is the latter that the health providers emphasized in

discussing Petitioner's limitations, and the fact that his weight was nearly the same at one

**MEMORANDUM DECISION AND ORDER - 23**

point in time and another point in time three years later does not carry the weight of logic as a basis for discounting Petitioner's credibility. Petitioner's edema–and the weight fluctuations it engendered–was well documented in the medical records, particularly those of Petitioner's cardiologist. The ALJ simply missed the mark by focusing on weight fluctuations over a long period of time when short term weight loss or gain was the primary medical concern.

Finally, the Court agrees with the ALJ that the Petitioner's habit of seeking out sexual intercourse with strangers was a valid basis for scrutinizing Petitioner's credibility. Ordinarily, an ALJ is justified in finding a claimant to be less than fully credible where the claimant's actual habits and activities of daily living indicate a greater level of ability to perform work-related tasks (which would include interacting with members of the general public) than is being claimed. The Court is not persuaded, however, that the ALJ's ultimate decision about the significance of that aberrant behavior justifies a finding under the applicable legal standard that Petitioner was not credible in general, or that Petitioner's conduct in regard to soliciting sexual intercourse online necessarily means that he could engage in more meaningful public interactions than was claimed.

This case is somewhat unusual in that the activities emphasized by the ALJ–i.e. soliciting and engaging in sex with strangers met online–were self-evidently abnormal and maladaptive behaviors, all in the form of a counterproductive and potentially dangerous habit that the medical evidence indicates was a source of significant distress for Petitioner. In particular, the records of the Lifeways Clinic demonstrate that this

**MEMORANDUM DECISION AND ORDER - 24**

behavior was something Petitioner was attempting to change, and for which he continually sought therapy and other forms of treatment. In other words, the records of his aberrant interaction with other people, as reflected in his sexual behavior pursued through online contacts, is not clear and convincing evidence of his ability to interact in an appropriate manner with others in a work setting, notwithstanding any other limitations which the record identifies. Such behavior stands apart from an "ordinary activity of daily living," and as such is not a proper basis on the particular facts of this case for concluding that Petitioner is not credible.

### D.   Remedy

The ALJ did not identify clear and convincing reasons for giving little weight to the opinions of Dr. Steinberg and Dr. Johnson.  Further, his reasons were inadequate for discounting the Petitioner's credibility.  Therefore, the Court must decide whether to reverse and remand for further proceedings, or order an immediate entry of benefits. "Usually, if additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded. The Social Security Act, however, makes clear that courts are empowered to affirm, modify, or reverse a decision by the Commissioner with or without remanding the cause for a rehearing" under 42 U.S.C. § 405(g). *Garrison v. Colvin,* 759 F.3d 995 (9th Cir. 2014). The issue of whether to remand for further proceedings or to require that an immediate award of benefits be entered depends on the utility of further proceedings. *Benecke v. Barnhart,* 379 F.3d 587, 593 (9th

**MEMORANDUM DECISION AND ORDER - 25**

Cir. 2004), and the question of whether further proceedings would be useful in turn often depends on whether evidence that the ALJ improperly discounted should be credited as true as a matter of law. *Varney v. Sec'y* of HHS, 859 F.2d 1396, 1400 (9th Cir.1988).

In *Garrison v. Colvin,* 759 F.3d 995 (9th Cir. 2014), the Ninth Circuit clarified the scope of the judicial power to remand for an award of benefits and the related "credit as true" rule, holding that:

> Since *Varney II,* we have applied the credit-as-true rule in nearly two dozen published opinions. In those cases, we have developed a workable and stable framework for applying the credit-as-true rule. Specifically, we have devised a three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

759 F.3d 995, 1019-20. In making decisions as to which kind of remand to issue, courts must "consider whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal rules." *Treichler v. Commissioner of Soc. Sec.,* 775 F.3d 1090, 1104 (9th Cir. 2014). The decision is discretionary with the district court. *Harman v. Apfel,* 211 F.3d 1172, 1178 (9th Cir. 2000).

Petitioner meets all the elements of the *Varney* test. As to the first element of that test (i.e. whether the record has been fully developed and whether a remand would serve any useful purpose), a remand at this stage would require not just a second but a third

**MEMORANDUM DECISION AND ORDER - 26**

hearing before the ALJ. This fact serves to illustrate that there has been ample and full

opportunity for the Commissioner to develop the record. The Ninth Circuit admonished in

*Garrison* against a result on review which creates an unfair "heads we win, tails let's play

again" incentive for the Commissioner when it comes to deciding issues related to the

weight to be accorded to a doctor's opinions or a claimant's subjective pain testimony.  A

remand in this case would foster such incentives. *Garrison,* 759 F.3d at 1022-23.  This

case also meets the second element of the *Varney* test, in that the ALJ failed to give clear

and convincing reasons for the adverse credibility determination, and failed to provide

legally adequate reasons for discounting the opinions of two of Plaintiff's treating

doctors. If Dr. Steinberg's opinions were credited as true, Petitioner would meet the

functional limitation criteria identified Paragraph "B" of listing 12.04, related to affective

disorders. Finally, at the administrative hearing, the Vocational Expert testified that

someone with Petitioner's particular constellation of limitations, *e.g.*, the need to take

unscheduled breaks in excess of a normal workday, a likelihood of missing two or three

workdays per month, and a tendency to allow basic disagreements with coworkers to

escalate into arguments–would not be competitively employable in the national economy.

(AR 69-70). There are no gaps or ambiguities in the record, and Petitioner is entitled to

disability benefits if Dr. Steinberg's and Dr. Johnson's testimony is credited as true.

## ORDER

**MEMORANDUM DECISION AND ORDER - 27**

For all the foregoing reasons, the Petition for Review (Dkt. 1) is **GRANTED**, and this case is **REMANDED** to the Commissioner of Social Security under 42 U.S.C. § 405(g) for an immediate entry of benefits.



DATED:  **March 15, 2017**

Honorable Ronald E. Bush
Chief U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 28**